IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| LARRY TAWNEY, | ) | CASE NO.5:20-CV-01504-PAG |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | United States District Judge |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN DOUGLAS FENDER, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant, | ) | |

**Introduction**

Before me[1] is the petition of Larry Tawney for a writ of habeas corpus under 28 U.S.C. §2254.[2] Tawney is incarcerated by the State of Ohio at the Lake Erie Correctional Institution in Conneaut, Ohio.[3] He is serving an aggregate sentence of 21 years imposed in 2018 by the Portage County Common Pleas Court after Tawney was found guilty at a jury trial of multiple charges related to a series of violent altercations with his girlfriend over money.[4]

In his petition, Tawney asserts as a single ground for relief that a comment by the prosecutor during closing argument improperly referenced Tawney's decision not to testify at

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Patricia A. Gaughan in a non-document order entered on October 30, 2020.
[2] ECF No. 1.
[3] https://drc.ohio.gov./OffenderSearch
[4] ECF No. 1 at 3.

trial.[5] He also seeks an evidentiary hearing.[6] The State, in its return of the writ, contends that this claim should here be denied because the Ohio appellate decision which rejected this same claim was not an unreasonable application of relevant holdings of the United States Supreme Court.[7] Tawney did not file a traverse.

For the following reasons, I will recommend that Tawney's petition be denied and that his request for an evidentiary hearing be denied.

## Facts

Background facts

The relevant background facts were found by the Ohio appeals court.[8] Tawney and the victim were in a boyfriend-girlfriend relationship where over the preceding months Tawney had become abusive.[9] After a night of drinking, Tawney and the victim returned to Tawney's house in the victim's car.[10] Upon arrival, the victim told Tawney she wanted to go home but Tawney refused.[11] He then removed the keys from the ignition, took the victim's cell phone and dragged the victim out of the car and into his house.[12]

Once inside, Tawney demanded the victim cook him breakfast.[13] When the victim refused, Tawney pushed her in a corner and held a serrated knife to her throat, berating her with insults.[14] As Tawney began to fix himself some eggs, the victim attempted to sneak away, but Tawney caught

---

[5] *Id*. at 5.
[6] *Id*. at 11.
[7] ECF No. 8.
[8] Facts found by the state appeals court are presumed correct by the federal habeas court. 28 U.S.C. §2254(e)(1).
[9] ECF No. 8 at 2, quoting from Ohio appeals court decision.
[10] *Id*.
[11] *Id*. at 2-3.
[12] *Id*. at 3.
[13] *Id*.
[14] *Id*.

her and threw her to the ground, putting his foot on her head.[15] Then, as the victim attempted to stand up, Tawney took the hot cast iron skillet he had been using, held it up close to the victim's face, and threatened to "burn her so badly that no one would want to look at her again."[16]

Tawney then[17] told the victim that he was going to take her to Youngstown to sell her for money.[18] However, the victim was able to convince Tawney that if he wanted money she could borrow some from her parents.[19] Tawney then drove the victim to her parents' house and told her go inside, get the money and get quickly get back to the car.[20]

Once the victim got inside the garage, she realized her parents were not home, so she ran inside the house and deadbolted the door.[21] When she did not immediately return to the car, Tawney approached the house, kicked the door in and found the victim on the phone.[22] He grabbed the phone out of her hand and removed its battery, throwing her to the floor, where he proceeded to "stomp[] on her head a number of times" and "kick[] her repeatedly in her privates and in her back."[23] He told her that if she "got him in trouble" he would "hunt her down and end her."[24]

Eventually, the victim promised Tawney that she would go with him if she could just get her purse.[25] When Tawney took the purse from her, she ran out of the house to a neighbor's house

---

[15] *Id.*
[16] *Id.*
[17] On direct examination one timeline of events during this period was set forth that was then modified on cross-examination. For purposes of this fact summary it is not necessary to address the differences. *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

screaming for help and pounding on the windows.[26] While the neighbor called 9-1-1 and the victim's parents, Tawney took the victim's purse and drove away in her car.[27]

Indictment, trial and sentence

Tawney was indicted in November 2017 on two counts of felonious assault, one count of abduction, one count of aggravated burglary, one count of robbery, one count of disrupting public services, and one count of grand theft auto.[28] After Tawney pled not guilty, the matter proceeded to a jury trial.

At trial, in addition to the victim's testimony, the prosecution also presented the testimony of the investigating police officer and the nurse who saw the victim at the hospital immediately after the incident.[29] Their testimony corroborated the victim's.[30] The officer testified that the door between the garage and the house was shattered and that the battery had been taken out of the phone and was on the floor.[31] The nurse testified that the victim had blood in her urine consistent with injuries to her back or privates.[32] Further, the nurse also testified that based on the color of the bruises, they were likely no more than a day or two old.[33] Photographs of the bruises were also admitted into evidence.[34]

---

[26] *Id.*
[27] *Id.*
[28] ECF No. 8, Appendix 1 (state court record) at 1.
[29] *Id.* at 58.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 59. The nurse further testified that while blood in the urine might also indicate a urinary tract infection, the victim did not have such an infection.
[33] *Id.*
[34] *Id.*

For its part, the defense did not dispute that the victim had been injured but maintained that Tawney was not shown to be responsible for the injuries.[35] Tawney himself did not testify, nor did the defense call any witnesses or offer any evidence.[36]

On July 12, 2018, the jury found Tawney guilty on all counts and, immediately after that finding, the judge sentenced Tawney to an aggregate term of twenty-one years in prison.[37]

Direct appeal

*Ohio appeals court*

Now represented by different counsel,[38] Tawney on August 9, 2018 timely[39] filed a notice of appeal.[40] In his brief in support, he raised the following two assignments of error:

1. The Prosecutor's statements in closing argument related to Appellant's failure to testify violated Appellant's privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

2. The Appellant's dur process rights and rights to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated by the ineffective assistance of counsel.[41]

---

[35] *Id.*
[36] *Id.*
[37] *Id.* at 9.
[38] ECF No. 1 at 10.
[39] Ohio App. R. 4(A) states that an appeal must be filed within 30 days of the entry of judgment in the trial court.
[40] ECF No. 8, Attachment at 14.
[41] *Id.* at 20-23.

The State filed a brief in response.[42] On August 12, 2019, the Ohio appeals court rejected both assignments of error and affirmed the judgment of the trial court.[43]

*Supreme Court of Ohio*

On September 25, 2019, Tawney, through new counsel,[44] timely[45] filed notice of appeal in the Supreme Court of Ohio.[46] In his memorandum in support of jurisdiction, Tawney raised the following single assignment of error:

1.  Prosecutorial misconduct occurs during closing argument when the prosecutor argues that a defendant has presented zero evidence on his behalf, and such misconduct cannot be cured by the trial court by instructing the jury to simply disregard those comments.[47]

The State filed a brief in opposition.[48] On December 17, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.[49] Tawney did not then seek a writ of certiorari from the Supreme Court of the United States.[50]

Federal habeas corpus

---

[42] *Id*. at 35.
[43] *Id*. at 57.
[44] ECF No. 1 at 10.
[45] Ohio S. Ct. Prac. R 7.01(A)(1)(a)(i) provides that notice of appeal must be filed in the Supreme Court of Ohio within 45 days of the appellate judgment for which review is sought.
[46] ECF No. 8, Attachment at 65.
[47] *Id*. at 68.
[48] *Id*. at 79.
[49] *Id*. at 91.
[50] ECF No. 1 at 4.

On July 8, 2020, Tawney, through yet another counsel,[51] timely[52] filed the present petition for federal habeas relief.[53] In that petition, Tawney asserted the following single ground for habeas relief:

1.   The Prosecutor's use of Mr. Tawney's decision not to testify violated Mr. Tawney's Fifth and Fourteenth Amendment rights to not be compelled to testify.[54]

The State, in its return of the writ, contends that the decision of the Ohio appeals court, which found that the prosecutor's comment about "zero evidence" did not necessarily or naturally refer to Tawney's decision not to testify but could refer to the uncontroverted evidence adduced at trial, was not an unreasonable application of the clearly established federal law of prosecutorial misconduct that requires both that the challenged statements be improper and then that the impropriety be shown to be flagrant such as would warrant reversal.[55]

As noted earlier, Tawney did not file a traverse.

**Analysis**

<u>Preliminary observations</u>

Before proceeding further, I make the following preliminary observations:

1.   There is no dispute that Tawney is in custody of the State of Ohio as the result of his conviction and sentence by an Ohio court in the matter that is the subject of this petition, and

---

[51] ECF No. 1 at 11.
[52] 28 U.S.C. §2254(d)(1).
[53] ECF No. 1.
[54] *Id*. at 4.
[55] ECF No. 8 at 9-19.

that he was so incarcerated at the time this petition was filed, thus vesting this Court with jurisdiction.[56]

2. There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[57]

3. In addition, as Tawney states in his petition,[58] and as my own review of the docket of this Court confirms, this petition is not a second or successive petition for federal habeas relief arising from this conviction and sentence.[59]

4. Further, as has been detailed above and is stated by Tawney,[60] the claim here has been exhausted by reason of having been presented to Ohio courts through one full round of the established review procedure.

5. Finally, although Tawney has not sought the appointment of counsel, he has in his petition requested an evidentiary hearing.[61] In that regard, the State has pointed out that the sole claim here involves the legal question of the constitutionality of a statement by the prosecutor that appears on the record and that was addressed by the Ohio appeals court.[62] Inasmuch as Tawney predicates his request for an evidentiary hearing on an alleged but unspecified need to "resolve the disputed issues of fact necessary for a fair adjudication of the issues raised in this petition,"[63] he does not address either the State's substantive point that the entirety of this claim appears on the

---

[56] 28 U.S.C. §2254(a).
[57] 28 U.S.C. §2254(d)(1).
[58] ECF No. 1 at 4.
[59] 28 U.S.C. §2254(b).
[60] ECF No. 1 at 9.
[61] *Id*. at 11.
[62] ECF No. 8 at 19.
[63] ECF No. 1 at 11.

record or the holding of the United States Supreme Court in *Cullen v. Pinholster*[64] which states that, where, as here, the state appeals court has adjudicated the petitioner's claims against him on the merits, the federal habeas court is "limited to the record that was before [that] state court …."[65] Thus, I recommend that Tawney's request for an evidentiary hearing be denied.

Recommended disposition

*The Ohio appellate court decision*

As related by the Ohio appeals court in its decision, the statement at issue here was made during the prosecution's closing argument. The prosecutor was speaking about defense counsel and the evidence at the time:

[STATE]: Now ladies and gentlemen, his closing argument has been nothing but speculation. The evidence in this case is a solid match. Look at the evidence.

Now, I expected [defense counsel] to come up here and muddy the waters. He's a very good adversary, and he did so very charmingly. We've worked together for a lot of years and I really respect him.

But ladies and gentlemen, he gets up here and he talks about how unreliable the victim was and somehow this case is fabricated.

Now, it's no big surprise to me, ladies and gentlemen, because that's the kind of defense that I see in the hundreds of cases that I've litigated, that the evidence is somehow fabricated or untrue. It's no big surprise to me, ladies and gentlemen.

---

[64] 563 U.S. 170 (2011).
[65] *Id*. at 180.

Now ask yourself, what else can he say? What can he say? He has zero evidence. And when the evidence is not –

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: I'll sustain the objection.

[STATE]: The evidence is uncontroverted, ladies and gentlemen. Uncontroverted.

After closing argument, the defense moved for a mistrial, outside of the presence of the jury, based on the prosecutor's statement quoted above:

[DEFENSE COUNSEL]: I have at this time to move for a mistrial based on the Prosecutor's closing argument that states that what evidence does the defense have. It sort of implies what has the defense proven or presented. I think it violates his right to remain silent and, instead, invites the jury to consider those issues. And at this time I think I have to move for a complete mistrial because I don't think there is any instruction that would cure it without more damage. Thank you.

THE COURT: [Prosecutor]?

[STATE]: Your Honor, the evidence in this case has been uncontroverted and that's what I was indicating, that they [the jury] are to review the evidence in this case.

THE COURT: Okay. And I did sustain your objection. I will, obviously, in my charge to the jury acknowledge that the defendant is not required to testify, not required to prove anything. And that should be a curative instruction, so I'll deny your motion.[66]

---

[66] ECF No. 8, Attachment at 59.

Tawney raised the issue of the appropriateness of the prosecutor's comments on appeal.[67] In doing so, Tawney maintained that the comments violated his right to a fair trial as set forth in *Griffin v. California*,[68] as well as in decisions of lower federal courts and the Ohio Supreme Court.[69]

The Ohio appeals court began its analysis by citing to *State v. Vaughn*,[70] an Ohio appellate court decision that stated Ohio's test for prosecutorial misconduct as it relates to comments on a defendant's failure to testify.[71] The court here found that the relevant test was whether "the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."[72] The court further observed that in analyzing language used by the prosecutor, factors such as "the nature of the closing remarks, whether the trial court gave corrective instructions, and the strength of the evidence against the defendant must be taken into account."[73] Moreover, it also noted that isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning.[74]

---

[67] ECF No. 8, Attachment at 20. As noted earlier, in addition to this issue, Tawney also raised an issue as to ineffective assistance of counsel, which issue was then not asserted to the Ohio Supreme Court nor raised here.
[68] 380 U.S. 609 (1965).
[69] ECF No. 8, Attachment at 26-27.
[70] 2019 WL 355168 (Ohio App. Jan. 28, 2019).
[71] ECF No. 8, Attachment at 60.
[72] *Id*. (quoting *Vaughn,* 2019 WL 355168, at *4).
[73] *Id.*
[74] *Id*. (citation and internal quotation omitted).

From this, the Ohio appeals court reasoned that the jury could have taken the prosecutor's remark "as a comment on the amount or nature of the evidence, not directly on Mr. Tawney's failure to testify."[75] In addition, the Ohio appeals court observed that the trial court had given a curative instruction and that the "evidence was overwhelmingly against Mr. Tawney."[76] Thus, it concluded that the prosecutor's comment did not "prejudicially affect[] Mr. Tawney's substantial rights."[77]

*Federal habeas analysis*

<u>Applicable law</u>

The United States Supreme Court has held that a defendant's failure to testify at trial may not be used as evidence of his guilt and that adverse comment on a defendant's failure to testify in a state criminal trial is unconstitutional under the Fifth and Fourteenth Amendments.[78] Prosecutorial comments alleged to be improper in this regard are analyzed under a two-step approach: first, was the comment improper and second, was the impropriety flagrant such as would warrant reversal.[79] Flagrancy is determined by reviewing the content of the remark and its context using four factors:

---

[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Griffin*, 380 U.S. at 615.
[79] *United States v. Carter,* 236 F.3d 777, 783 (6th Cir. 2001) (citations omitted).

(1) Did the prosecutor "manifestly intend" to comment on the defendant's exercise of his Fifth Amendment right or would a jury "naturally and necessarily" interpret the remark that way;

(2) Was the comment an isolated occurrence or part of an extensive pattern;

(3) How strong was the prosecution's other evidence;

(4) Did the judge give a curative instruction.[80]

The *Carter* court further observed that when undertaking this analysis, the entire analytical process is to be done "within the context of the [entire] trial to determine whether such comments amounted to prejudicial error."[81] In other words, the overarching test is whether the alleged misconduct by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[82]

Application of the law

Here, as noted, the Ohio appeals court employed Ohio case law in formulating the relevant test.[83] However, as is also evident, that the case authority cited by the Ohio court conforms to the applicable federal law on this issue. Thus, the analysis now is whether the Ohio

---

[80] *Id*.
[81] *Id*. (citing *United States v. Young*, 470 U.S.1, 11-12 (1985)).
[82] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted).
[83] I observe in this regard that Tawney also notes that the Ohio appeals court decision here also rests on Ohio case law and did not cite to any federal case authority. ECF No. 1 at 6.

court decision is contrary to that federal law.

For the reasons that follow, I will recommend finding that the Ohio appeals court decision here is not contrary to the relevant applicable federal law.

Initially, the Ohio court determined that the prosecutor's comment about "zero evidence" was not a reference to Tawney's failure to testify but a reference to the fact that the prosecution's evidence was uncontradicted.[84] Thus, as provided in the first part of the two-part *Carter* test, it concluded that the reference was permitted and not improper. To that end, the court noted that the prosecution did not rely solely on the testimony of the victim but introduced evidence from the examining nurse and the investigating officer.[85]

Moreover, having determined the remark was not improper, the Ohio appeals court then considered the "zero evidence" comment by the prosecutor under the four factors outlined by the Sixth Circuit in the second part of the *Carter* test. Specifically, the Ohio court found first that the comment arose in the context of a closing argument[86] section that dealt with defense counsel's strategy of arguing that the prosecution's case was fabricated. Thus, rather than being an obvious reference to Tawney's failure to testify, the state court found it

---

[84] ECF No. 8, Attachment at 60.
[85] *Id*.
[86] *Id*.

could have been taken by the jury as a comment on defense counsel having no contrary evidence to present.[87] Next, the Ohio court found that the comment was an isolated remark that should not be given its most damaging meaning when viewed in context.[88] Further, the appeals court noted that the trial court gave a curative instruction and that the prosecution's evidence against Tawney was "overwhelming."[89]

Tawney, for his part, argues first that the appeals court decision is flawed because it is based state court decisions that represent a "separate and contrary" line of cases from relevant federal case law.[90] He contends that the relevant law which should have been followed was "established" by the Sixth Circuit in *Bowling v. Parker,* 344 F.3d 487 (6th Cir. 2003).[91]

To that point, I note initially that the test set forth in *Bowling* is the same four-part test that forms the second element of bifurcated analysis used in *Carter*, which is cited here above.[92] Thus, to the extent that Tawney seeks to use that test to evaluate the Ohio appeals court decision here, I note that the Ohio court's analysis closely tracked the two-part test set out by the Sixth Circuit in *Carter* and, as described above, explicitly considered all four elements

---

[87] *Id*.
[88] *Id*.
[89] *Id*.
[90] ECF No. 1 at 5.
[91] *Id*. at 8.
[92] It appears that this two-element test with four parts to the second element was initially set out by the Sixth Circuit in *United States v. Carroll,* 23 F.3d 1380, 1388 (6th Cir. 1994).

of the second part of that test.

That said, to the extent that Tawney then seeks to question the manner in which the Ohio court applied the relevant test, which he does as to each of the four parts of the second element,[93] I observe, as did the court in *Bowling*, the case relied upon by Tawney, that in ascertaining whether any improper prosecutorial comments were so flagrant as to render the entire trial fundamentally unfair,[94] the federal habeas court must accord deference to the decision of the state appeals court that determined that no constitutional violation occurred.[95] Further, as noted earlier, facts found by the state appeals court are presumed true by the federal habeas court.[96]

Further, this court does not review the claim *de novo* and arrive at its own, independent conclusion as to whether the Ohio court's decision was "wrong" but must, in this case, determine only if the state appeals court decided the matter differently than the United States Supreme Court did on a set of materially indistinguishable facts.[97] Indeed, the Supreme Court has held that the phrase "contrary to" in this context must be understood to mean "diametrically different, opposite in character or nature, or mutually opposed."[98]

---

[93] ECF No. 1 at 8-9.
[94] Bowling, 344 F.3d at 512.
[95] *Id.* at 513 (citation omitted).
[96] 28 U.S.C. §2254(e)(1).
[97] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
[98] *Id*. at 405.

Finally, when employing an analysis based on clearly established federal law, this Court is bound by decisions of the Sixth Circuit, such as have been cited above, which find that federal law has been established as to a point of law.[99] If, however, there is no clearly established federal law to support the petitioner's argument, "that argument must fail."[100]

**Conclusion**

Therefore, for the reasons stated, I recommend that the sole ground for relief advanced here by Tawney be denied since the Ohio appellate court decision that found that ground to be without merit was not contrary to clearly established federal law. I further recommend that to the extent that Tawney seeks an evidentiary hearing, that request be denied for the reasons stated.

IT IS SO RECOMMENDED.

Dated: July 13, 2022  s/William H. Baughman Jr.
United States Magistrate Judge

---

[99] *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004).
[100] *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. §2254(d)(2)).

**NOTICE REGARDING OBJECTIONS**

Any party may object to this Report and Recommendation. To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation. If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it. If you fail to serve and file your objections within this 14-day time period, you forfeit your rights appeal, absent a showing of good cause for such failure.